## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ALAN PESCH**                                          **CIVIL ACTION NO.**

**VERSUS**                                               **20-288-SDD-EWD**

**PROGRESSIVE NORTHWESTERN**
**INSURANCE COMPANY, ET AL.**


      Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

      In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

      ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

      Signed in Baton Rouge, Louisiana, on February 23, 2021.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ALAN PESCH**                                        **CIVIL ACTION NO.**

**VERSUS**                                            **20-288-SDD-EWD**

**PROGRESSIVE NORTHWESTERN**
**INSURANCE COMPANY, ET AL.**

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Before the Court is the Motion to Remand ("Motion"),[1] filed by Alan Pesch ("Plaintiff").

The Motion is opposed by Defendant Progressive Northwestern Insurance Company

("Progressive").    As explained more fully below, because the removal was not timely, it is

recommended[2] that the Motion be granted in part, and that this action be remanded to the Twenty-

Third Judicial District Court, Parish of Ascension, State of Louisiana.    To the extent Plaintiff

requests an award of costs and attorney's fees under 28 U.S.C. § 1447(c), it is recommended that

the request be denied.

## I.    FACTS AND PROCEDURAL BACKGROUND

This is a civil action involving claims for damages based upon the injuries allegedly

sustained by Plaintiff on February 3, 2019 (the "Accident"), when Plaintiff's vehicle was rear-

ended by the vehicle driven by Defendant Trace Adair ("Adair").[3]    As a result of the Accident,

Plaintiff filed a Petition for Damages ("Petition") against Adair and Adair's liability insurer,

Progressive, on or about May 21, 2019 in the Twenty-Third Judicial District Court for the Parish

---

[1] R. Doc. 10.

[2] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review."  *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).

[3] R. Doc. 1-2, pp. 2-3.

of Ascension.[4]  On May 11, 2020, Progressive removed the matter to this Court asserting that this

Court has diversity jurisdiction under 28 U.S.C. § 1332.[5]   The Amended Notice of Removal[6]

alleges that Plaintiff is a citizen and domiciliary of Louisiana, Adair is a citizen of Arkansas, and

Progressive is incorporated in Ohio with its principal place of business in Ohio; therefore, there is

complete diversity of citizenship among the parties.[7]

Regarding the amount in controversy,[8] Progressive filed, under seal, Plaintiff's medical

records and Plaintiff's **April 9, 2020** settlement demand of $500,000 (the "Demand").[9]

Progressive contended that the Demand satisfied Progressive's burden of establishing by a

preponderance of the evidence that the amount in controversy exceeded the jurisdictional

threshold.[10]  Pertinent to this Motion, Progressive argues that, while it had received some medicals

records for Plaintiff, it was not until Progressive received Plaintiff's April 9, 2020 Demand that it

was unequivocally clear and certain that Plaintiff sought damages in excess of the jurisdictional

threshold, which rendered the case removable.[11]

On May 26, 2020, Plaintiff filed the Motion, contending that the removal was untimely

pursuant to 28 U.S.C. § 1443(b)(3). Specifically, Plaintiff served responses to Progressive's

---

[4] R. Doc. 1-2.

[5] R. Doc. 1, introductory paragraph and pp. 2-3.  Progressive stated that Adair consented to removal.  *Id.* at p. 4. Plaintiff does not dispute that the May 11, 2020 removal was effected within one year of the commencement of the May 21, 2019 state court action.  *See* 28 U.S.C. 1446(c).

[6] The original Notice of Removal failed to adequately allege the citizenship of the parties, so on May 19, 2020, the undersigned *sua sponte* ordered Progressive to file an amended notice of removal that adequately alleged the citizenship of Plaintiff and Adair, to which Progressive complied.

[7] R. Doc. 1, p. 2.

[8] It is not facially apparent from Plaintiff's Petition that his claims were likely to exceed $75,000 exclusive of interest and costs, as Plaintiff only generally asserted that he was "hurt in the wreck" and sustained unidentified injuries and damages, and seeks damages for boilerplate categories of damages, *e.g.,* physical and mental pain and suffering, medical expenses, inconvenience, property damages, loss of enjoyment of life, and lost wages or lost earning capacity. R. Doc. 1-2, p. 3.

[9] While Progressive filed the Demand under seal, Plaintiff disclosed the amount of the Demand in the Motion. R. Doc. 10, p. 5.

[10] R. Doc. 1, p. 3 *and see* Progressive's Sealed Supplemental Memorandum at R. Doc. 6 and the sealed records and settlement Demand attached thereto.

[11] R. Doc. 1, p. 3 and R. Doc. 6.

Requests for Admissions on September 4, 2019, admitting that his damages exceeded the jurisdictional threshold;[12] however, the matter was not removed until May 11, 2020.[13]  On May 27, 2020, Progressive filed its opposition memorandum, reiterating the contention that the removal was timely based on the Demand.[14]

On June 1, 2020, a telephone conference was scheduled with the parties to discuss the issues raised in the Motion.  In particular, the undersigned discussed concerns with Progressive's failure to adequately address the primary argument against the timeliness of the removal, *i.e.*, whether Plaintiff's September 4, 2019 Response to Progressive's Request for Admission No. 1 (the "Response"), which explicitly stated that Plaintiff's "Claim exceeds $75,000," was 28 U.S.C. §1446(b)(3) "other paper" sufficient to start the 30-day removal clock.  Progressive was ordered to review the *Williams v. Stockstill*[15] decision, as it appeared to be on point and dispositive of the timeliness issue.  Progressive made an oral motion to submit a supplemental opposition memorandum, or alternatively, to withdraw the notice of removal.[16]  The oral motion was granted, and thereafter, Progressive filed its Supplemental Opposition to Motion to Remand, to which Plaintiff filed a reply memorandum.[17]

## II.    ARGUMENTS OF THE PARTIES

### A.  Progressive's Sealed Supplemental Memorandum in Support of Removal

At the time of removal, Progressive filed the Demand and some of Plaintiff's medical records under seal, as well as a Sealed Memorandum discussing same.  In the Sealed Memorandum, Progressive says it first learned information regarding Plaintiff's alleged injuries

---

[12] *See* R. Doc. 10-1 and R. Doc. 10, pp. 5-6.
[13] R. Doc. 1.
[14] R. Doc.  13.
[15] No. 18-9152, 2019 WL 581517 (E.D. La. Feb. 13, 2019).
[16] R. Doc. 14.
[17] R. Docs. 15-16.

on September 30, 2019, when Plaintiff produced written discovery responses and partial medical records, which reflected conservative treatment for cervical injuries through March 2019 and medical bills totaling $7,832. Progressive then obtained more medical records via subpoenas, which reflected additional, more invasive treatment through December 2019, including an epidural steroid injection that had been performed and another that was scheduled, but it did not appear to Progressive that Plaintiff's claims reached the jurisdictional minimum.[18]  However, that changed when Progressive received the Demand. Therein, not only did Plaintiff demand $500,000 in settlement, but provided additional information regarding his injuries, including that, as a result of the Accident, Plaintiff was in daily pain that prevented him from focusing and which "gets in the way of Mr. Pesch's active lifestyle."[19] Progressive also argues that the Demand put it on notice of Plaintiff's theory of recovery, including the position that Adair faces a large excess judgment, and Plaintiff's contention that Progressive cannot rely on its policy limits as a defense because it breached its fiduciary duties to Adair, in several ways.[20]

Relying on past authority of this Court, and in particular *Leonard v. Sentry Select Ins. Co.*, Progressive argues that the Demand "is valuable evidence to indicate the amount in controversy at the time of removal," and further, that Plaintiff has similar medical expenses and injuries as the plaintiff in *Leonard*.[21]  Specifically, at the time of the Demand, the records reflected that Plaintiff had medical expenses of $10,441, was diagnosed with facet arthropathy and disc bulges at C2-3, C3-4, C4-5, C5-6, and C6-7, and will require future orthopedic care, including another steroid injection.  Progressive argues that, prior to the Demand, it had no knowledge of the extent of

---

[18] R. Doc. 6, pp. 2-3.
[19] R. Doc. 6-1 (Affidavit of David Strauss) and R. Doc. 6, p. 3.
[20] R. Doc. 6, pp. 3-4.
[21] R. Doc. 6, p. 5, *citing* No. 15-675, 2016 WL 1393382, at *3 (M.D. La. Mar. 11, 2016), *report and recommendation adopted*, No. 15-675, 2016 WL 1369397 (M.D. La. Apr. 6, 2016).

Plaintiff's damages, and "[a]s in *Leonard*, Pesch's Demand served as the 'other paper' which put

Progressive on notice that this suit was removable. *See* 28 U.S.C. § 1446(b)(3)."[22]

### B. Plaintiff's Motion to Remand

In his Motion, Plaintiff acknowledges that pre-removal settlement demands can qualify as

§1443(b)(3) "other paper," but disagrees that Plaintiff's April 9, 2020 Demand was the first notice

to Progressive that Plaintiff's damages exceeded the jurisdictional minimum.[23] Rather, Plaintiff

contends that Progressive was put on notice that Plaintiff's claims exceeded the jurisdictional

threshold on **September 4, 2019**, when Plaintiff "admitted that his case exceeded the jurisdictional

threshold in his response to defendant's Request for Admission:"

> REQUEST FOR ADMISSION NO. 1: Please admit or deny that
> your claims, exclusive of interest and costs, do not exceed
> $75,000.00.
>
> RESPONSE: Denied. Claim exceeds $75,000.00.[24]

Citing *Williams* and this Court's holding in *Pylant v. Sedgwick Claims Management Services, Inc*.,

Plaintiff argues that, in light of this unequivocal response, and pursuant to 28 U.S.C. §1446(b)(3),

Progressive was required to file the Notice of Removal by October 4, 2019.[25]

Plaintiff also argues that on **December 17, 2019**, Progressive received medical records

pursuant to subpoena indicating the following from Plaintiff's November 14, 2019 visit with this

doctor:

> Pain is in the neck and will occasionally radiate to the left upper
> extremity in approximately a C5 dermatone. Pain is described as an
> aching, sharp, throbbing sensation. **It is constant throughout the
> entire day**, worse with activity, bending, twisting, sitting, standing

---

[22] R. Doc. 6, pp. 5-6.
[23] R. Doc. 10, pp. 3, 6.
[24] R. Doc. 10-1, pp. 1, 7,
[25] R. Doc. 10, pp. 1, 7-8, *citing Williams,* 2019 WL 581517 and *Pylant v. Sedgwick Claims Management Services, Inc.*, No. 17-189, 2017 WL 3446536 (M.D. La. Jun. 29, 2017), *report and recommendation approved*, No. 17-189, 2017 WL 3446029 (M.D. La. Aug. 10, 2017).

and rest. He has not noted any relieving factors. **Pain is negatively affecting his enjoyment of life, mood, relationships with people, sleep and general activity.** [emphasis added][26]

Plaintiff contends that this language is "almost identical" to the Demand language Progressive asserted in its Sealed Memorandum first put it on notice of the amount of Plaintiff's claims, which establishes that Progressive actually had information regarding Plaintiff's pain much earlier from the medical records.[27] Therefore, Plaintiff alternatively argues that these records also qualify as "other paper" that triggered the removal clock in December 2019.[28]

According to Plaintiff, based on either his prior discovery responses or Progressive's prior receipt of Plaintiff's medical records, the May 11, 2020 removal was untimely. Plaintiff also seeks an award of his costs and fees incurred because of the removal pursuant to 28 U.S.C. § 1447(c). Plaintiff says that such an award is warranted because Progressive had no objectively reasonable basis for removal in light of the referenced authority; Progressive misrepresented when it first learned that the claims exceeded $75,000; and Progressive "jeopardized the plaintiff's state court jury trial date," which was set by agreement of the parties for October 21, 2020.[29]

### C. Progressive's Opposition and Supplemental Opposition to Remand

Progressive contends that it did not have unequivocally clear and certain evidence to support removal prior to receipt of the April 9, 2020 Demand. Progressive argues that Plaintiff misunderstands the appropriate burden of proof, and incorrectly implies that because "Progressive *could* have removed the suit earlier, it was required to do so," in reliance on the lower

---

[26] R. Doc. 10, p. 5, *citing* R. Doc. 10-2, p. 3.

[27] R. Doc. 10, p. 7.

[28] R. Doc. 10, p. 7, *citing Bonck v. Marriott Hotels,* Inc. No. 02-2740, 2002 WL 31890932, at *4 (E.D. La. Dec. 30, 2002) and *Steed v. Chubb Nat'l Ins. Co.*, No. 15-6511, 016 WL 403837, at *2 (E.D. La. Feb. 3, 2016).

[29] R. Doc. 10, pp. 1, 9-10, *citing Martin* v. *Franklin Capital Corp.*, 546 U.S. 132, 141, (2005) and *Valdes* v. *Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000).

preponderance of the evidence standard.[30]   Citing *Johnson v. Packaging Corp. of America*,[31] Progressive contends that "[t]he 'unequivocally clear and certain' standard is applied when a court is determining whether a defendant has timely removed, not whether removal was permissive," and therefore, "a defendant very well may have enough information in hand to reasonably conclude that the amount in controversy likely exceeds $75,000.00 and still not be subject to a thirty-day removal deadline."[32]

With regard to receipt of Plaintiff's September 4, 2019 Response, Progressive argues that this Response was insufficient to trigger the removal period because it did not clearly and unequivocally show that the case was removable for three reasons. First, Plaintiff's Response to Request for Admission No. 2, served at the same time, expressly denied that complete diversity existed:

> **REQUEST FOR ADMISSION NO. 2**
>
> Please admit that plaintiff's petition contains only parties which are diverse in nature for Federal Jurisdiction purposes.
>
> **REPONSE:**
>
> Denied. We have outstanding requests to defendant driver for the identity of his Louisiana employer.[33]

Second, Plaintiff's September 30, 2019 Responses to Interrogatory No. 11 also "undermined" Plaintiff's Response to Request for Admission No. 1 because, therein, Plaintiff declined to specify if his damages exceeded $75,000 and claimed medical expenses of only $6,992.15:

---

[30] R. Doc. 13, p. 2.
[31] No. 18-613, 2019 WL 1271053, at *6–7 (M.D. La. Feb. 27, 2019), *report and recommendation adopted*, No. 18-613, 2019 WL 1271009 (M.D. La. Mar. 19, 2019).
[32] R. Doc. 13, pp. 2-3, *citing Blake v. Wal-Mart Stores, Inc.*, 358 F. Supp. 3d 576, 580 (W.D. La. Oct. 31, 2018) ("Just because a defendant has information that it could use to remove a case . . . does not mean that the removal period is triggered and the defendant must do so at that time") (*citing Mumfrey v. Powermatic, Inc.* [sic, *CVS Pharmacy, Inc.*], 719 F.3d 392 (5th Cir. 2013)).
[33] R. Doc. 13, p. 5, *citing* R. Doc. 10-1.

**INTERROGATORY NO. 11:**

Pursuant to L.S.A. - C.C.P. Article 893, please specify the dollar amount sought for each element of damage described in the Petition for Damages, including but not limited to, property damage, medical expenses (both past and future), lost wages (both past and future), economic loss and general damages. If unable to state the specific dollar amount, please state whether the amount in dispute is in excess of $50,000, exclusive of interest and costs; and whether the amount in dispute is in excess of $75,000, exclusive of interest and costs.

**ANSWER:**

With regard to special damages, as treatment is ongoing, plaintiff has not reached maximum medical improvement and, accordingly, is unable to determine the extent of special damages sustained. With regard to medical damages and lost wages to date, copies of any documentation presently in plaintiffs possession are attached hereto. Copies of additional documentation will be forwarded upon receipt thereof

…

[chart showing $6,992.15 in medical expenses]

Plaintiff objects to this interrogatory as the determination of the general damages due is within the province of the jury and there is no provision under Louisiana law which would require the plaintiff to usurp the function of the jury to make a determination of these damages. Further answering, plaintiff states that the amount in dispute is sufficient to entitle any party to a trial by jury in accordance with Louisiana law [$50,000].[34]

Third, Progressive contends that Plaintiff's Response to Request for Admission No. 1, was not, by itself, unequivocal evidence of the amount in controversy, as "a plaintiff's assertion *alone* (whether in discovery responses or in some other writing) is insufficient to trigger the removal period." Progressive argues that Plaintiff's Response was the first paper of any kind which provided any information regarding Plaintiff's damages and Progressive had no other independent evidence,

---

[34] R. Doc. 13, p. 5 *and see* R. Doc. 8-1, pp. 4-5.  The actual Responses were not filed in the record.

8

along with the Response, that unequivocally provided notice that the amount in controversy was met.[35]

With regard to Progressive's December 20, 2019 receipt of Plaintiff's medical records as starting the removal clock, Progressive avers: "[t]he opinions directly rejecting this argument are too numerous to recount here."[36] Progressive argues that these medical records did not provide unequivocally clear and certain evidence of the amount in controversy because they failed to contain a surgery recommendation, failed to indicate medical expenses anywhere near $75,000, and failed to contain a recommendation for further treatment. At most, the records conveyed that Plaintiff underwent one steroid injection (which reportedly reduced much of Plaintiff's pain) and, at that time, Progressive was only aware that Plaintiff had $11,018 in medical expenses.[37]

After the telephone conference with the undersigned, Progressive filed its Supplemental Memorandum in Opposition. Progressive continues to contend that, despite its review of *Williams*, the September 4, 2019 Response was not §1446(b)(3) "other paper" sufficient to start the removal clock, and while Progressive might have been permitted to remove upon receipt of the Response, it was not required to do so.[38] Citing *Williams, Pylant, and Allen v. Wal-Mart Louisiana, LLC,* Progressive reiterates that a discovery response standing alone cannot qualify as "other paper" but

---

[35] R. Doc. 13, pp. 4-6, *citing Matute v. Wal-Mart Stores, Inc*., No. 19-0124, 2019 WL 2396870, at *5 (W.D. La. May 21, 2019), *report and recommendation adopted*, No. 19-0124, 2019 WL 2385194 (W.D. La. June 5, 2019)(emphasis added) (*citing Bosky v. Kroger*, Appellee Brief, 2001 WL 34127780). *See also* the Amended Notice of Removal at R. Doc. 8-1, p. 4. Progressive argues that Plaintiff mistakenly relies on *Pylant*, which is distinguishable because it is an "amount in dispute" case, not a "timeliness" case. As such, *Pylant's* holding as to what paper meets the preponderance of the evidence standard for the purpose of determining the amount in dispute is not controlling as to what paper meets the unequivocally clear and certain standard for the purposes of determining the timeliness of removal. R. Doc. 13, pp. 6-7.

[36] R. Doc. 13, p. 7, *citing Elkins v. Bradshaw*, No. 18-1035, 2019 WL 2096126, at *4 (M.D. La. Apr. 24, 2019), *report and recommendation adopted*, No. 18-1035, 2019 WL 2092564 (M.D. La. May 13, 2019) ("This Court has consistently held that the 30-day removal deadline of § 1446(b)(3) is not triggered where a defendant must parse medical records and rely on case law to support its position that the amount in controversy exceeds $75,000.00").

[37] R. Doc. 13, pp. 7-8. Progressive also denies that Plaintiff should be awarded § 1447(c) costs and fees, because Progressive believes removal was timely. R. Doc. 13, pp. 8-10.

[38] R. Doc. 15, pp. 2-4.

9

instead, must be accompanied by other, objective evidence of the amount in controversy.[39] Moreover, according to Progressive, "many courts in this circuit have held that a plaintiff's uncorroborated assertions are insufficient to establish the amount in controversy," citing this Court's *Occidental Chemical Corporation v. Saia Motor Freight Line, LLC* decision, as well as several others.[40] According to Progressive, in *Occidental*, this Court properly ordered remand and held that the plaintiff's response to the notice of removal admitting that jurisdiction existed and acquiescing in removal, was, without more, insufficient to establish the amount in controversy.[41] Progressive argues that if it had removed on the basis of the September 4, 2019 Response alone, it would have been "tantamount to the parties stipulating to jurisdiction—a practice roundly rejected by courts in this Circuit."

Additionally, Progressive newly contends that, at the time Progressive received the September 4, 2019 Response, it had no other basis upon which to know that Plaintiff's claims would reach the jurisdictional minimum because the applicable insurance policy has limits lower than $75,000. Finally, Progressive argues that its December 2019 receipt of Plaintiff's medical records did not qualify as "other paper" because Progressive received the records via subpoena, and not through a voluntary act of Plaintiff.[42] Progressive also reasserts that Plaintiff's request for §1447(c) costs and fees should be

---

[39] R. Doc. 15, pp. 4-5, *citing Williams*, 2019 WL 581517 at *3; *Pylant,* 2017 WL 3446536, at *5, and *Allen v. Wal-Mart Louisiana, LLC,* No. 08-132-C, 2008 WL 2220014, at *3 (M.D. La. May 28, 2008).

[40] R. Doc. 15, p. 5, *citing Occidental Chemical Corporation v. Saia Motor Freight Line, LLC*, No. 15-689, 2016 WL 6518668, at *2 (M.D. La. Aug. 31, 2016), *report and recommendation adopted,* No. 15-00689, 2016 WL 6518440 (M.D. La. Nov. 1, 2016); *Gardner v. Cato Corp.*, No. 18-01152, 2019 WL 1213020, at *2 (W.D. La. Feb. 19, 2019), *report and recommendation adopted sub nom., Gardner v. Cato Corp*, No. 18-01152, 2019 WL 1213137 (W.D. La. Mar. 14, 2019) (Plaintiff's answers to requests for admission denying that her damages did not exceed $75,000.00 were insufficient to prove amount in controversy); *Hall v. Foremost Ins. Group*, No. 08-4065, 2008 WL 4507822, at *2 (E.D. La. Oct. 2, 2008) (remanding for lack of jurisdiction, in spite of plaintiff's admission that the damages exceeded $75,000.00, where the applicable policy limits were $50,000); and *Lund v. Wal-Mart Stores, Inc.*, No. 00-0167, 2000 WL 264003, at *2 (E.D. La. Mar. 8, 2000) ("In the case at hand, this court finds that the Plaintiff's Responses to Wal–Mart's Requests for Admissions . . . does not relieve Wal–Mart of its burden to support federal jurisdiction at the time of removal").

[41] R. Doc. 15, pp. 5-6.

[42] R. Doc. 15, p. 8, *citing Toney v. Rimes*, No. 16-736, 2017 WL 834985, at *3 (M.D. La. Feb. 9, 2017), *report and recommendation approved*, No. 16-736, 2017 WL 830971 (M.D. La. Mar. 2, 2017) (answer filed by a co-defendant not "other paper").

denied because Progressive's removal was objectively reasonable, and because *Pylant* establishes that there is actually no established rule on this point.[43]

### D. Plaintiff's Reply Memorandum

Plaintiff argues that his Response was served pursuant to La. C.C.P. art. 1468, which provides: "Any matter admitted under this rule is conclusively established" and argues that conclusively establishing a fact proves it beyond a reasonable doubt. Thus, when Plaintiff affirmatively responded: "Claim exceeds $75,000," this established an uncontested fact, and it is unclear why Progressive served the request for admission if it intended to disagree that Plaintiff's response was not an uncontested fact.[44] Next, Plaintiff points out that Progressive failed to respond to the Court's Order to substantively address *Williams*, and instead merely asserted that the removing defendants in *Williams* had additional medical information to support removal. Plaintiff argues that this distinction does not help Progressive, because Progressive likewise had additional medical information similar to the medical records relied on in *Williams*, which still rendered the May 11, 2020 removal untimely.[45] Plaintiff also reasserts that an award of costs and fees under § 1447(c) is appropriate in light of Progressive's objectively unreasonable removal and refusal to withdraw the Notice of Removal after the conference with the Court.[46]

### III.    LAW AND ANALYSIS

### A. Legal Standards

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[47]  When original jurisdiction is based on

---

[43] R. Doc. 15, pp. 8-9, *citing Pylant*, 2017 WL 3446536, at *5 (declining to decide if a request for admission, without more, could have constituted "summary judgment type evidence.")
[44] R. Doc. 18, pp. 1-2.
[45] R. Doc. 18, p. 2.
[46] R. Doc. 18, pp. 2-3.
[47] 28 U.S.C. § 1441(a).

diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[48] The removing party has the burden of proving federal jurisdiction and, if challenged, that the removal was procedurally proper.[49]  Remand is proper if at any time the court lacks subject matter jurisdiction.[50]  The jurisdictional facts that support removal must be judged at the time of removal.[51]

The time limits for filing a notice of removal, provided in the removal procedure rules of 28 U.S.C. § 1446(b) are as follows:

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
> ...
> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

With regard to triggering the 30-day time period from the defendant's receipt of the initial pleading as provided in § 1446(b)(1), the Fifth Circuit has provided a bright line rule that "the thirty-day removal period under the first paragraph is triggered only where the initial pleading '*affirmatively reveals on its face* that the plaintiff is seeking damages in excess of the minimum jurisdictional

---

[48] 28 U.S.C. § 1332(a)(1).
[49] *Garcia v. Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).
[50] *See* 28 U.S.C. § 1447(c).
[51] *Kimble v. America First Ins. Co.*, No. 14-67, 2014 WL 1761556, at *2 (M.D. La. Apr. 28, 2014), *citing Gebbia v. Wal-Mart Stores, Inc.,* 233 F.3d 880, 883 (5th Cir. 2000) and *Womack v. National Union Fire Insurance Company,* No. 16-13127, 2016 WL 4728096, at *1 (E.D. La. Sept. 12, 2016).

amount of the federal court.'"[52]  If a plaintiff wants the 30-day period to run from the defendant's receipt of the initial pleading, a plaintiff should place in that pleading "a specific allegation that damages are in excess of the federal jurisdictional amount."[53]  The initial pleading in this action does not contain a specific allegation that damages are in excess of the federal jurisdictional amount.[54]

With regard to triggering the 30-day time period from the defendant's receipt "of an amended pleading, motion, order, or other paper," as provided in § 1446(b)(3), the Fifth Circuit has provided that the 30-day removal period is triggered only where jurisdiction is "unequivocally clear and certain" from the document.[55]  Courts have found that the standard for triggering removal based upon a subsequent "amended pleading, motion, order, or other paper," as provided in § 1446(b)(3), is at least as strict as the standard for triggering the 30-day period for removal based on an initial pleading provided in § 1446(b)(1).[56]

---

[52] *Scott v. Office Depot, Inc.,* No. 14-791, 2015 WL 2137458, at *4 (M.D. La. May 7, 2015)*, citing Mumfrey v. CVS Pharmacy, Inc.,* 719 F.3d 392, 399 (5th Cir. 2013) (*quoting Chapman v. Powermatic, Inc.,* 969 F.2d 160, 163 (5th Cir. 1992) (emphasis added by *Mumfrey*)).

[53] *See Elkins v. Bradshaw,* No. 18-1035, 2019 WL 2096126, at *2 (M.D. La. Apr. 24, 2019), *report and recommendation adopted,* No. 18-1035, 2019 WL 2092564 (M.D. La. May 13, 2019), *citing Chapman,* 969 F.2d at 163 and 2019 WL 2096126 at *2, n. 12: ("Such a statement would provide notice to defendants that the removal clock had been triggered, but would not run afoul of state laws, such as Louisiana, that prohibit pleading unliquidated damage amounts. *See* La. C.C.P. art. 893. In *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir. 2002), the Fifth Circuit addressed *Chapman* and suggested, in dicta, that specific damage estimates in the initial pleading that are less than the minimum jurisdictional amount can be combined with other unspecified damage claims to trigger the time limit for filing the notice of removal. In *Mumfrey*, a subsequent panel criticized this portion of *Bosky*, questioned the authority upon which it relied, and noted that if there is a conflict between *Chapman* and *Bosky*, *Chapman* controls as the earlier opinion. *Mumfrey*, 719 F.3d at 400 (characterizing this portion of *Bosky* as 'a line that has become the source of significant confusion'). *See Clark v. Dolgencorp,* No. 13-2336, 2014 WL 458220, *3 (W.D. La. Feb. 4, 2014) ('*Mumfrey* expressly rejected the dicta in *Bosky* that was the cause of confusion and instead reiterated that the 'bright line rule' set forth in *Chapman* applies').")

[54] Plaintiff's allegations concerning his damages are boilerplate and devoid of any description of the medical injuries he allegedly sustained.  R. Doc. 1-2, p. 3.

[55] *See Scott,* 2015 WL 2137458, at *4, *citing Bosky,* 288 F.3d at 211 (stating that the statutory term "ascertained" means "unequivocally clear and certain").

[56] *See Scott,* 2015 WL 2137458, at *4, n. 2 ("In *Bosky,* the court indicated that the standard to trigger the second 30 day removal period (as is at issue in the instant case) 'seems to require a *greater* level of certainty' than the *Chapman* standard used to determine whether a case must be removed based on the allegations contained in the initial pleading. *Id.* at 211 (emphasis added). The Fifth Circuit has subsequently held that *Bosky's* discussion of the standards for triggering the initial 30-day removal period constituted dicta because the issue before the *Bosky* court was whether removal was timely pursuant to the language of what is now § 1446(b)(3), and not whether removal was timely

The record reflects, and the parties do not dispute, that complete diversity exists, the amount in controversy exceeds $75,000, and Plaintiff's original Petition did not affirmatively reveal on its face that this matter was removable and thus did not trigger the removal clock.[57] The only issue is whether the removal clock began to run from receipt of Plaintiff's April 9, 2020 Demand, as argued by Progressive, or from receipt of Plaintiff's September 4, 2019 Response to Request for Admission No. 1, as argued by Plaintiff.  As such, and as explained during the telephone conference, the issue before the Court in this case is a "timeliness dispute" rather than an "amount in controversy dispute."[58] That is, the parties do not disagree as to whether the amount in controversy has been met, but rather, whether Progressive missed the deadline for removal and is therefore barred from removing the case.

### B.  The Notice of Removal Is Not Timely

Plaintiff's Response to Request for Admission No. 1 triggered the removal clock, as Plaintiff's admission, which is deemed to be an admitted fact, stated: "Denied.  Claim exceeds

---

pursuant to the language of what is now § 1446(b)(1). *See Mumfrey,* 719 F.3d at 399 n. 11 (*citing Bosky,* 288 F.3d at 209–11). The *Mumfrey* court criticized the *Bosky* decision to the extent it stated that the bright line rule announced in *Chapman* was less strict than the requirement for triggering the 30-day period with regard to amended pleadings and other documents. *Id.* at 400. While the *Mumfrey* court does not use the 'unequivocally clear and certain' language found in *Bosky,* its ultimate holding that the 30-day removal period was triggered by receipt of an amended petition seeking $3,575,000 in damages and not the initial petition, which did not specifically request any amount of damages, suggests that the standards for triggering the 30-day period are virtually identical (if not in fact identical) if removal is based upon the initial pleading or a subsequent paper. *See Smith v. Wal–Mart Louisiana, LLC,* No. 13–2368, 2013 WL 4781778, at *3 (W.D. La. Sept. 5, 2013) (*Bosky* should be read as imposing a trigger for the second removal period that is *at least* as strict as that set forth in *Chapman.*').").

[57] R. Doc. 10, pp. 4-5 and R. Doc. 13, pp. 1-2.  As noted, complete diversity was established by the Amended Notice of Removal. Plaintiff concedes that the amount in controversy requirement for federal subject matter jurisdiction is met here, and the combination of Plaintiff's pre-removal Response to Request for Admission No. 1 and $500,000 settlement Demand both sustain Progressive's burden of proving, by a preponderance of the evidence, that the amount in controversy was met at removal. *See Fairchild v. State Farm Mut. Auto. Ins. Co.,* 907 F. Supp. 969, 971 (M.D. La. Nov. 30, 1995) (holding that a settlement letter is valuable evidence to indicate the amount in controversy at the time of removal) and *Pylant,* 2017 WL 3446536, at *4  (noting that district courts within the Fifth Circuit have looked to responses to requests for admissions served prior to removal in determining whether the amount in controversy requirement is satisfied).

[58] *Williams,* 2019 WL 581517, at *2 (E.D. La. Feb. 13, 2019), *citing Mumfrey,* 719 F.3d at 398.

$75,000.”[59]  By this admission, Plaintiff clearly and unequivocally stated that at least one element

of his damages exceeded $75,000.[60]  As Progressive was previously apprised by the undersigned,

---

[59] As the September 4, 2019 Response triggered the clock, the issue of whether the December 17, 2019 medical records also started the clock need not be reached.  However, if they were considered, Progressive is correct that they would not have triggered the clock.  The December 10, 2019 report relied on by Plaintiff reflects that, during Plaintiff's initial visit on November 14, 2019, Plaintiff reported constant pain that interfered with his quality of life.  However, the report reflects that, after one steroid injection, Plaintiff's pain was lessened by 60%, Plaintiff reported a pain level of "2" on a scale of 10, and Plaintiff did not believe further interventions were necessary.  R. Doc. 10-2, p. 3. The report contains no recommendation for surgery, or the amount of medical expenses incurred, and therefore, it falls far short of clearly and unequivocally establishing that the amount in controversy was met.  The eight pages of medical records filed under seal by Progressive (which includes the report also relied upon by Plaintiff), also appear to mainly relate to Plaintiff's December 10, 2019 follow-up visit after receiving the steroid injection.  They reflect that Plaintiff initially had constant pain, which was lessened after the steroid injection, and received a diagnosis of "cervical spondylosis," five disc bulges with disc degeneration, sprained spinal ligaments, and joint disease based on an April 10, 2019 MRI. (R. Doc. 6-4)  The billing records reflect a total of four visits and only $2,403 in medical expenses. These records likewise failed to start the removal clock—there is no surgical recommendation and therefore no estimate of any recommended surgery, and only a minimal amount of medical expenses were indicated. Progressive asserts that, as of December 19, 2019, it had received Plaintiff's medical bills from Plaintiff and via subpoenas reflecting $11,018 in medical expenses.  R. Doc. 13, p. 8.  Documentation of that figure does not appear to be in the record, but it would also not be unequivocally clear and certain from that amount that the amount in controversy was likely to exceed $75,000.  *See In Manieri v. CR England Inc.,* No. 19-2805, 2019 WL 2022535, *3 (E.D. La. May 8, 2019), where the court determined that neither discovery responses representing the plaintiff's treatment, nor medical records that actually contained a surgical recommendation but did not contain an estimate for the cost of the surgery, were sufficient to meet the unequivocally clear and certain standard. ("Because Manieri's updated medical records do not constitute "unequivocally clear and certain" evidence that the amount in controversy exceeds $ 75,000, the 30-day time limit to remove under § 1446(b)(3) was not triggered on February 21, 2019 when C.R. England received the records.")  The same reasoning applies here.  Plaintiff's medical expenses ultimately showing medical expenses of $2,403, but no surgery recommendation and estimated cost, are insufficient to meet the unequivocally clear and certain standard to trigger the 30-day removal clock.  Courts, including this one, have consistently held that the 30-day removal deadline of §1446(b)(3) is not triggered where a defendant must parse medical records and rely on case law to support its position that the amount in controversy exceeds $75,000.00.  *See Elkins,* 2019 WL 2096126, at *4, n. 25, *citing Daniel v. Lowe's Home Centers, L.L.C.,* No. 16-374, 2016 WL 6562073, at *5 (M.D. La. Oct. 11, 2016), *report and recommendation adopted,* No. 16-374, 2016 WL 6561565 (M.D. La. Nov. 3, 2016) (finding time period in § 1446(b)(3) was not triggered by plaintiff's discovery responses or plaintiff's representation that she was going to have lumbar surgery) (*citing Bosky,* 288 F.3d at 210); *Smith,* 2013 WL 4781778 (rejecting plaintiff's contention that recommendation for cervical disc surgery triggered the second 30-day removal period); *Scott,* 2015 WL 2137458, at *5 (finding plaintiff's medical records and deposition testimony did not make it unequivocally clear and certain that the amount in controversy requirement was satisfied and explaining that "[d]efendants would have to speculate or conduct their own additional investigation, as highlighted by the competing 'quantum' cases submitted by both parties, to determine whether the amount in controversy requirement was satisfied...."). *See also Hoffman v. Oyeket,* No. 17-4058, 2017 WL 2963226, at *3 (E.D. La. July 12, 2017) (remanding suit where there was no "clear and certain 'other paper' showing over $ 75,000 is in controversy" and noting "'[o]ther papers describing injuries and other damages that seem likely to exceed the amount in controversy requirement, but not showing unequivocally that the requirement is met, are insufficient to trigger the removal clock.'") (*quoting Green v. Geico General Ins. Co.*, No. 15-3968, 2015 WL 5971760, at *3 (E.D. La. Oct. 14, 2015)).  Plaintiff's reliance on *Bonck v. Marriott Hotels, Inc.*, No. 02-2740, 2002 WL 31890932, at *4 (E.D. La. Dec. 30, 2002) and *Steed v. Chubb National Insurance Company,* No. 15-6511, 2016 WL 403837, at *2 (E.D. La. Feb. 3, 2016) is misplaced, as those holdings relate to the issue of whether a defendant has met its burden of showing, by a preponderance, that the amount in controversy exceeds the jurisdictional threshold based on medical records.  As the medical records did not trigger the clock, regardless of how Progressive received them, Progressive's other argument, *i.e.*, that medical records subpoenaed by a defendant cannot qualify as other paper because they are not obtained via a voluntary act of the plaintiff, is not reached.

the facts of this case are very similar to *Williams*, and the same result should be reached. Additional

information aside from Plaintiff's Response was not required to start the removal clock:

> [A] written interrogatory response by plaintiffs that their damages exceed the jurisdictional amount is "unequivocally clear and certain" information and appropriate summary-judgement type evidence that would allow defendants to meet their preponderance of evidence burden. In fact, in *Chapman,* the seminal Fifth Circuit case on timeliness disputes, the Court stated that "the answer to interrogatory which triggered the filing of the notice of removal in this case" qualified as a "paper" from which removability could be ascertained pursuant to § 1446(b)(3). *See Chapman v. Powermatic, Inc.*, 969 F.2d 160, 164 (5th Cir. 1992). The Fifth Circuit has held that the "other paper" from which removability may be ascertained "requires a voluntary act by the plaintiff." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996). Judges in this district have frequently held that interrogatory responses can trigger the thirty-day period for removal. *See Leboeuf v. Texaco,* 9 F. Supp. 2d 661, 664 (E.D. La. 1998) (holding that plaintiffs' interrogatory response raised an issue of federal law sufficient to trigger the thirty-day period for removal); *Freeman v. Witco, Corp.,* 984 F. Supp. 443, 447 (E.D. La. 1997) (holding that plaintiff's response to defendants' request for admission constituted "other paper under § 1446(b)"); *Booty v. Shoney's*, 872 F.Supp. 1524 (E.D. La. 1995) (holding that it was not until receipt of plaintiffs' interrogatory answers that defendant became aware that plaintiffs' claims were removable; *Vincent v. Silver Cinema's, Inc.*, 1998 WL 274242 (E.D. La.) (holding that defendants' notice of removal was timely filed within thirty days after receipt of plaintiff's interrogatory response). Therefore, defendants' thirty-day window for removal began upon receipt of plaintiffs' interrogatories responses on April 20, 2018 and defendants' notice of removal filed on October 3, 2018 was untimely.[61]

Progressive failed to substantively address *Williams*.[62]  Furthermore, both parties cite "amount in

dispute" cases as authority, which reflects a misunderstanding of the correct standard to be applied.

---

[60] *See Chapman,* 969 F.2d at 161 (holding that the defendant properly removed within thirty days of receipt of plaintiff's interrogatory response stating he had suffered damages in excess of $800,000 and holding "Clearly the answer to interrogatory which triggered the filing of the notice of removal in this case is such an 'other paper.'")
[61] *Williams,* 2019 WL 581517, at *3.
[62] At most, Progressive attempts to distinguish *Williams* by referring to the fact that the case noted that, at the time plaintiff responded to the discovery request at issue, she also provided a medical record that showed a steroid injection. But the holding quoted above did not mention, much less rely on, the production of that record.

All of the amount in dispute cases cited are inapplicable to the issue of the timeliness of removal.[63]
Whether a defendant has met its burden of showing, by a preponderance, that the amount in
controversy exceeds the jurisdictional threshold is a separate question from whether an "other
paper" (received after a defendant's receipt of the initial pleading) was "unequivocally clear and
certain" so as to trigger the 30-day deadline to remove provided in § 1446(b)(3).[64]  As Progressive
points out, "a defendant very well may have enough information in hand to reasonably conclude
that the amount in controversy likely exceeds $75,000.00 and still not be subject to a thirty-day
removal deadline."[65]

Progressive's argument that additional objective information is required (in addition to a
voluntary admission by the plaintiff) to clearly and unequivocally show that the amount in

---

[63] *See, e.g.,* R. Doc. 10, p. 7, *citing Pylant*, 2017 WL 3446536, which Progressive correctly notes in its first opposition
memorandum is an amount in dispute case. R. Doc. 13, p. 6.  However, Progressive then subsequently relied on *Pylant*
and other amount in dispute cases. *See, e.g.,* R. Doc. 15, pp. 4-6, *citing Pylant*; *Allen,* 2008 WL 2220014; *Occidental
Chem. Corp.,* 2016 WL 6518668; *Gardner,* 2019 WL 1213020; *Hall,* 2008 WL 4507822; and *Lund,* 2000 WL 264003,
at *2.  Although *Allen*, *Lund* and *Gardner* involve discovery responses, the question in those cases was whether the
defendant had established the amount in controversy.  In *Allen* and *Gardner*, the discovery responses were also
equivocal because the plaintiffs indicated an inability to determine whether the damages exceeded $75,000.  *See Allen*,
2008 WL 2220014, at *3 (in response to a request for admission that the plaintiff's damages did not exceed $75,000,
the plaintiff's denial was followed by the statement that the plaintiff had "continuing injuries that have not been
quantified," and in response to an interrogatory asking whether the plaintiff was seeking damages in excess of the
jurisdictional threshold, the plaintiff stated she "has not determined the extent of her damages but at the time of the
suit being filed, her damages were not in excess of $75,000.00"); and *Gardner*, 2019 WL 1213020, at *2 (the plaintiff
"denied the defendant's requests for admission that the damages in this case do not exceed $50,000 and $75,000.00,
respectively, on the basis of 'prematurity as medical treatment [was] still ongoing'").  To the extent Progressive cites
this line of cases as support for its argument that additional evidence is necessary to establish whether the removal
clock has started, these cases are inapplicable.

[64] *See Mumfrey*, 719 F.3d at 400 (distinguishing as inapposite "amount dispute" cases holding that removal was
appropriate where jurisdictional amount was "facially apparent").  *See also Elkins*, 2019 WL 2096126 at *4, n. 24,
*citing Daniel*, 2016 WL 6562073, at *5, n. 5 (noting that while none of the discovery responses or deposition testimony
triggered the 30-day period of § 1446(b)(3), plaintiff's injuries and treatment (including a scheduled lumbar fusion
surgery) satisfied the amount in controversy requirement) (collecting cases); *Chandler v. Ruston Louisiana Hosp. Co.
LLC,* No. 14-121, 2014 WL 1096365, at *6 (W.D. La. Mar. 19, 2014)(finding that plaintiff's discovery responses
claiming, *inter alia*, injuries to her knee, leg, back, and neck and that she would likely require knee surgery were
sufficient to meet defendants' burden of establishing by a preponderance that the amount in controversy exceeded the
jurisdictional minimum but that none of the documents relied upon triggered the 30-day deadline of § 1446(b)(3)
because such documents did not meet the "unequivocally clear and certain" standard).

[65] R. Doc. 13, pp. 2-3, *citing Blake,* 358 F. Supp. 3d at 580 (W.D. La. Oct. 31, 2018) ("Just because a defendant has
information that it could use to remove a case . . . does not mean that the removal period is triggered and the defendant
must do so at that time") (*citing Mumfrey,* 719 F.3d 392).

controversy is met is belied by the case law.  As set forth above, the standard to trigger the time period for removal of the initial pleading is that the pleading affirmatively reveals on its face that the amount in controversy is met.  The Fifth Circuit has stated that this standard is met by an allegation in the petition that damages exceed the federal jurisdictional amount.[66] The standard as to 'other paper' removal is essentially the same.[67] There is no doubt that, if Plaintiff had put a statement in the Petition that his damages exceeded the federal jurisdictional amount, this statement would have immediately triggered the time period for removal.  An unequivocal response to a request for admission that clearly reveals that the amount in controversy exceeds $75,000 is the same information.[68]  Progressive does not point to any cases that require additional verification to meet the unequivocally clear and certain standard *when the plaintiff affirmatively states that the damages exceed the jurisdictional amount*.[69]  Indeed, see the express language of 28 U.S.C. § 1446(c)(3)(A), which provides:

---

[66] *See Chapman*, 969 F.2d at 163 (If a plaintiff "wishes the thirty-day period to run from the defendant's receipt of the initial pleading, [plaintiff should] place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount.").

[67] *See Scott,* 2015 WL 2137458, at *4, n. 2 ("While the *Mumfrey* court does not use the 'unequivocally clear and certain' language found in *Bosky,* its ultimate holding that the 30-day removal period was triggered by receipt of an amended petition seeking $3,575,000 in damages and not the initial petition, which did not specifically request any amount of damages, suggests that the standards for triggering the 30-day period are virtually identical (if not in fact identical) if removal is based upon the initial pleading or a subsequent paper. *See Smith,* 2013 WL 4781778, at *3 (*Bosky* should be read as imposing a trigger for the second removal period that is *at least* as strict as that set forth in *Chapman.*'") *and see Chapman,* 969 F.2d at 161 (holding that the defendant properly removed within thirty days of receipt of plaintiff's interrogatory response stating he had suffered damages in excess of $800,000 and holding "Clearly the answer to interrogatory which triggered the filing of the notice of removal in this case is such an 'other paper.'")

[68] *See Jordan v. Barnhill's Buffet, Inc.*, No. 11-72, 2011 WL 2078012, at *2 (S.D. Miss. May 20, 2011) (holding that an unequivocal response to a request for admission denying that the plaintiff was not seeking damages in excess of $75,000, exclusive of interests and costs, was unequivocally clear and certain to trigger the time period for 'other paper' removal: "In the present case, Plaintiff unequivocally denied Defendant's Request for Admission.  As such, her Response constitutes 'other paper,' and this action was timely and properly removed.").

[69] Progressive continues to mix the analysis of amount in dispute cases with the analysis of timeliness in its arguments that the parties cannot confer jurisdiction by agreement.  While Progressive is correct that parties cannot simply agree that the amount in controversy is met, whether the time period for removal has commenced is, again, not the same inquiry as whether the parties can establish the amount in controversy required to establish federal subject matter jurisdiction.  *See* R. Doc. 15, pp. 5-6 for Progressive's arguments on this issue. Regardless, there is authority from this Court holding that a discovery response would be competent summary judgment evidence of the amount in controversy, although that case does not decide whether such a response would be sufficient standing alone.  *See Pylant*, 2017 WL 3446536, at * 4 (discussing split in cases as to whether an admission in discovery regarding the

> If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, **or in responses to discovery**, shall be treated as an "other paper" under subsection (b)(3).[70]

Thus, 28 U.S.C. § 1446(c)(3)(A) does not require more than a response to discovery if the response meets the unequivocally clear and certain standard.[71]

Progressive's arguments that Plaintiff's Response to Request No. 1 was "undermined" by either Plaintiff's Response to Request for Admission No. 2, or Plaintiff's Response to Interrogatory No. 11, also fail. The Response to Request for Admission No. 2 denied that diversity of citizenship existed because of Plaintiff's lack of knowledge of the identity *of an unnamed potential defendant*, Adair's employer, who was never actually named as a defendant prior to (or after) removal. This denial, based on the unknown identity of a non-party, did not raise a question as to the citizenship of the named parties so as to prevent the clock from running. Progressive affirmatively stated in the Notice of Removal that the named parties were diverse and did not give any indication that any party's domicile had changed from the time that the state court action was filed.[72] [73]

---

jurisdictional amount satisfies the amount in controversy requirement and concluding that such an admission is relevant summary judgment type evidence for determining whether the amount in controversy requirement is satisfied). Because this is not an amount in controversy dispute, this Report and Recommendation also does not reach the issue of whether a discovery response, standing alone, would be sufficient to meet a defendant's burden of establishing amount in controversy by a preponderance of the evidence.

[70] Emphasis added.

[71] *See, e.g., Roberson v. Progressive Security Insurance Company,* No. 11-520, 2011 WL 4737417, at *3 (M.D. La. Sept. 16, 2011), *report and recommendation approved,* No. 11-520, 2011 WL 4732804 (M.D. La. Oct. 5, 2011) (finding that removal was timely and was triggered by the plaintiff's settlement demand. As to the plaintiff's denial of a request for admission that her claims exceeded $75,000, which the plaintiff contended started the removal clock, this Court held: "Plaintiff did not clearly admit that the amount she is claiming is more than $75,000. **Had she responded affirmatively, the removal clock would have started**.") (emphasis added).

[72] *See Coury v. Prot*, 85 F.3d 244, 349 (5th Cir. 1996)("In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court.").

[73] Progressive also argues that its policy limits are less than $75,000, and so "there was no basis upon which Progressive could have known if Plaintiff's claims exceeded those limits," at the time it received Plaintiff's Response to Request for Admission No. 1. Rather, Progressive argues that it was not aware that Plaintiff was seeking damages in excess of the limits until it received Plaintiff's settlement demand and Plaintiff's theory of an "unlimited policy." R. Doc. 18, pp. 8-9. However, this argument is unavailing because, regardless of the policy, Adair, who is also named as a defendant, could be held responsible for any excess judgment.

Plaintiff's September 30, 2019 Response to Interrogatory No. 11 also did not operate to retroactively stop the clock, which had already started running after service of Plaintiff's earlier Response to Request for Admission No. 1.  Regardless, the Response to Interrogatory No. 11 did not "undermine" the Response to Request for Admission No. 1.  Rather, Plaintiff (1) responded that Plaintiff was "unable to determine the extent of special damages sustained," (2) lodged an objection to the interrogatory "as the determination of the general damages due is within the province of the jury," and (3) answered: "Plaintiff states that the amount in dispute is sufficient to entitle any party to a trial by jury in accordance with Louisiana law [$50,000]."[74]  None of these statements expressly contradict the prior admission that at least one "Claim exceeds $75,000."

Unlike many others, this is actually a case where the Plaintiff affirmatively stated in an other paper, *i.e.*, his September 4, 2019 Response to Request for Admission No. 1, that his damages exceeded the jurisdictional requirement, thus triggering the 30-day period for removal pursuant to § 1446(b)(3).[75]  The May 11, 2020 removal was untimely, as it is many months past the October 4, 2019 deadline.  The removal statute is strictly construed "and any doubt as to the propriety of removal should be resolved in favor of remand."[76]

## C.  An Award of Costs and Fees is Not Warranted In this Case

Plaintiff also requests an award of costs and fees incurred in filing his Motion to Remand pursuant to 28 U.S.C. § 1447(c), which provides, in pertinent part, that an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred

---

[74] R. Doc. 13, p. 5 *and see* R. Doc. 8-1, pp. 4-5.
[75] *Daniel,* 2016 WL 6562073, at *4, *citing Mumfrey*, 719 F.3d at 400 (timing rule triggered where Amended Petition sought $3,575,000 in damages).
[76] *Delgado v. Shell Oil Co.*, 890 F. Supp. 1324, 1341 (S.D. Tex. 1995) ("When considering a motion to remand the removing party bears the burden of showing that removal was proper.  This extends not only to demonstrating a jurisdictional basis for removal, but also necessary compliance with the requirements of the removal statute.  Because removal jurisdiction 'raises significant federalism concerns,' courts must construe removal statutes 'narrowly, with doubts resolved in favor of remand to the state court.'") (citations omitted).

as a result of the removal.[77]   The language of § 1447(c) is permissive and there is no automatic entitlement to an award of attorney's fees.[78] In applying this provision, courts consider "the propriety of the removing party's actions based on an objective view of the legal and factual elements in each particular case.... In other words, the question we consider in applying § 1447(c) is whether the defendant had objectively reasonable grounds to believe the removal was legally proper."[79]

An award of costs and attorney's fees is not warranted in this case, although it is a close question. On the one hand, many of Progressive's arguments against remand do not directly address the issue here, which is whether the removal clock begins to run when a plaintiff specifically and affirmatively states that the federal jurisdictional amount in controversy is met.  It was also pointed out to Progressive in a telephone conference that Progressive failed to adequately address this argument in its initial opposition, and Progressive's attempt to distinguish *Williams v. Stockstill*[80] in its supplemental opposition memorandum falls short.  Indeed, many cases hold that a discovery response can start the removal clock if, as here, the response is unequivocally clear and certain.  Finally, the issue of costs and fees was specifically discussed during the telephone conference, and Plaintiff agreed to waive the request for costs and fees prayed for in the Motion if Progressive withdrew its Notice of Removal.[81]  Accordingly, Progressive was on adequate notice of the risk that costs and fees could be awarded if remand was granted, particularly given the skepticism expressed with regard to Progressive's initial legal and factual arguments.

---

[77] 28 U.S.C. § 1447(c); R. Doc. 10, p. 9; R. Doc. 18, pp. 2-3.
[78] *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 291 (5th Cir. 2000).
[79] *Id.* at 293.
[80] No. 18-9152, 2019 WL 581517 (E.D. La. Feb. 13, 2019).
[81] R. Doc. 14, n. 11.

On the other hand, there is some lack of uniformity in the decisions regarding whether a discovery response, standing alone, would be sufficient to meet a removing defendant's burden of establishing the amount in controversy. While this case does not present an amount in controversy issue, the potential of a Catch-22 is apparent—if all the defendant has is an unequivocally clear and certain discovery response that starts the removal clock, for some courts that may not be enough to establish subject matter jurisdiction if the case is removed. This Report does not resolve that issue, but recognition of the question (and the lack of a clear answer) militates against awarding costs and fees in this case.

## IV.    RECOMMENDATION

**IT IS RECOMMENDED** that the Motion to Remand, filed by Plaintiff Alan Pesch, be **GRANTED IN PART,** and this matter be **REMANDED** to the Twenty-Third Judicial District Court, Parish of Ascension, State of Louisiana, as it was untimely removed.

**IT IS FURTHER RECOMMENDED** that Plaintiff's request for an award of costs and attorney's fees under 28 U.S.C. § 1447(c) be **DENIED**.

Signed in Baton Rouge, Louisiana, on February 23, 2021.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**